UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL DAVID WATSON,

    Plaintiff,

v.

RICH ZURCHER, *et al.*,

    Defendants.

CASE NO. C07-0374RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment (Dkt. # 23), Plaintiff's motion to amend (Dkt. # 30), and Defendants' motions to strike (Dkt. # 31, 34). Neither party has requested oral argument, and the court finds the motion suitable for disposition on the basis of the parties' briefing and supporting evidence. For the reasons explained below, the court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment, GRANTS Plaintiff's motion to amend, and DENIES Defendants' motions to strike.

## II. BACKGROUND

This case arises from interactions between Seattle police officers and Plaintiff Michael Watson. On the evening of February 3, 2005, during pre-Mardi Gras festivities,

ORDER – 1

Watson walked through the Pioneer Square neighborhood of downtown Seattle with his friend, Cheron Gibbons. Douglass Benedetti, a strolling street vendor, was selling beaded necklaces. Benedetti complimented Gibbons' breasts and told Watson to buy some beads for her, and Watson took a necklace from Benedetti without paying for it. *See* Kannin Decl. (Dkt. # 27), Ex. W at 5. Benedetti continued walking with Watson and Gibbons to demand five dollars for the necklace, but they ignored Benedetti and made no attempt to pay him.

The three walked toward Seattle Police Department ("SPD") officers, who heard Benedetti demand payment and saw Watson and Gibbons ignore his requests. Defendant Officers Thomas Mooney and Rich Zurcher approached Watson. Larkin Decl. (Dkt. # 24), Ex. A at 9. The officers encouraged Watson to pay for the beads to avoid being arrested. *Id.*, Ex. A. at 10-11, Ex. B. at 7. The parties agree that Watson responded, "This is bullshit." *Id.*, Ex. A at 12; Watson Decl. ¶ 8. Watson pulled his debit card from his wallet and offered to find a cash machine to pay for the beads. Kannin Decl., Ex. W at 9.[1] The parties describe the events that followed differently.

Watson claims an officer told him he was under arrest after he offered to find a cash machine. Next, an officer asked for his identification, and Watson tried to hand his wallet to him. Watson Decl. ¶ 11. An officer then applied a Taser to Watson's stomach and another officer tackled him from behind, causing them both to fall to the ground. Kannin Decl., Ex. W at 11-12. Watson admits that his arms were around the officer as they were on the ground. Watson Decl. ¶ 11. Watson claims that multiple officers applied Tasers until he stood up. *Id.* ¶ 12. Watson claims that Zurcher then grabbed him and caused him to fall hard onto the sidewalk. *Id.* The fall ruptured a disc in Watson's

---

[1] Watson claims that after he told the officers that he did not have any cash, Gibbons gave Benedetti five dollars. Kannin Decl., Ex. G. at 8. Defendants claim that Gibbons paid for the beads later. Larkin Decl., Ex. A. at 18.

ORDER – 2

lower back. *Id*. The officers continued to stun him with the Tasers while he was lying face down on the ground, causing burns to his back, arms, elbow, and neck. *Id*. ¶ 14. One officer also stood on his legs while Zurcher handcuffed him. *Id*. ¶ 13. Watson claims that the officers then dragged Watson away from the crowd that had gathered to watch, and then resumed applying the Tasers as he lay on the ground in handcuffs. Kannin Decl., Ex. W at 15. According to Watson, he never resisted arrest at any point during this interaction. Watson Decl. ¶¶ 9, 11, 14.

Defendants claim that after Watson had refused to cooperate with the officers' attempts to resolve the situation and refused to provide identification, the officers told Watson he was under arrest. Larkin Decl., Ex. A at 19. Mooney grabbed Watson's arm to take him into custody, but Watson then struck him in the chest, which made Mooney lose his balance and fall backward, landing on the ground under Watson. Larkin Decl., Ex. A at 22. Mooney and Zurcher called for backup. *Id*., Ex. A at 29. More than one officer applied their Tasers to Watson several times in order to gain control of him. *Id*., Ex. A at 31. The Defendants claim that after several applications of the Tasers, the officers gained control of Watson and were able to take him to jail. *Id*. at 34.

Watson was booked into King County Jail on charges of theft, resisting arrest, and assault. After he posted bail and was released, he went to a hospital emergency room to be treated for burns, abrasions, bruises, and pain. Watson Decl. ¶ 16.

Watson has sued five named SPD officers, five unnamed SPD supervisory officers, SPD Chief Gil Kerlikowske, the City of Seattle, and five unnamed municipal policymakers, alleging claims for violation of 42 U.S.C. § 1983 and for the torts of assault and battery, false arrest, negligence, negligent infliction of emotional distress, and negligent hiring, training, and/or supervision.

ORDER – 3

Defendants moved for summary judgment against all claims for the reasons discussed below.[2]

## III. ANALYSIS

**A. The Court Grants in Part Defendants' Motion for Summary Judgment.**

    **1. Legal Standard on Summary Judgment.**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this initial burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue exists for trial. Fed. R. Civ. P. 56(e); *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Where the evidence, viewed in the light most favorable to the non-moving party, presents a genuine issue of material fact, then summary judgment must be denied. *Fontana v. Haskin*, 262 F.3d 871 (9th Cir. 2001).

    **2. The Court Grants Summary Judgment Against Watson's Section 1983 Claim for False Arrest.**

Defendants assert that they are entitled to summary judgment against Watson's Section 1983 claim for false arrest because Watson's arrest was supported by probable cause.

A plaintiff may bring a claim under Section 1983 to redress violations of his or her "rights, privileges, or immunities secured by the Constitution or [federal] laws" by a person or entity acting under the color of state law. 42 U.S.C. § 1983; *Awabdy v. City of*

---

[2] After responding to the summary judgment motion, Watson moved to withdraw the Section 1983 and negligent hiring claims against Kerlikowske, and his Section 1983 claims against the City of Seattle. *See* Pltf.'s Mot. (Dkt. # 30). This motion is GRANTED.

ORDER – 4

*Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). The Constitution protects a suspect from warrantless arrest unless there is probable cause for a law enforcement officer to believe that a criminal offense has been or is being committed. *Devenpeck v. Alford*, 453 U.S. 146, 152 (2004). If an arrest is supported by probable cause, then the arrest is generally lawful. *Whren v. United States*, 517 U.S. 806, 818-19 (1996).

Although the parties dispute some facts related to the events leading up to the arrest, Watson admits that he took a necklace from Benedetti and did not pay for it, yet Benedetti demanded payment. *See* Watson Decl. ¶¶ 4-5. The officers were present when Benedetti demanded payment from Watson. *See* Watson Decl. ¶ 5. Even if it is true, as Watson claims, that Gibbons later paid for the necklace or that Watson intended to get cash later, Watson still admits that he took a necklace from Benedetti without paying for it. Therefore, even under Watson's version of the facts, the officers had probable cause to believe that Watson committed the crime of theft. *See* Seattle Municipal Code §§ 12A.06.080, -08.050 (a person is guilty of theft if he or she knowingly obtains or exerts unauthorized control over the property of another with intent to deprive him of the property). The existence of probable cause renders his arrest lawful. *See Whren*, 517 U.S. at 818.

Because the undisputed facts establish that Watson's arrest was supported by probable cause, the court grants summary judgment against Watson's claim for false arrest.

**3. The Court Grants Summary Judgment Against Watson's First Amendment Claim.**

Watson also challenges the arrest on First Amendment grounds, claiming that he was arrested in retaliation for his comment to police officers that "this is bullshit."

An arrest violates the First Amendment if it is made in retaliation for a suspect's constitutionally protected speech. *See Knox v. Southwest Airlines*, 124 F.3d 1103, 1109

ORDER – 5

(9th Cir. 1997). The Defendants argue that Watson's challenge fails because he was lawfully arrested for theft, which was unrelated to anything Watson said to the officers.

In response to this argument, Watson has provided the court with a page-long paragraph of string citations to cases where courts found that police officers retaliated against a suspect's protected speech. *See* Def.'s Opp'n at 22-23. He has not attempted to analogize the facts of his case to any of those cases, and has not presented any substantive argument on the issue. Because the court has already concluded that Watson's arrest was supported by probable cause, and Watson has failed to present facts or argument that would support a conclusion that the arrest was based on retaliation, the court grants summary judgment against Watson's First Amendment challenge to the arrest.

### 4. Watson's Section 1983 Claim Based on Excessive Force Survives Summary Judgment.

Defendants assert that the officers used reasonable force, and that they are therefore entitled to summary judgment against Watson's Section 1983 claim based on excessive force.

The Constitution protects a suspect from an officer's use of excessive force. *Graham v. Connor*, 490 U.S. 386, 395 (1989). To determine whether force is excessive, a court must balance the amount of force used against the governmental interests at stake. *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007). A court's evaluation of governmental interests at issue in a particular case should include an assessment of the *Graham* factors, which include the severity of the crime, whether the suspect poses a threat to the safety of the officers, and whether the suspect attempts to flee or actively resists arrest. *Id.* (citing *Graham*, 490 U.S. at 396).

### a) There are Disputed Issues of Material Fact Regarding Excessive Force.

ORDER – 6

As noted earlier in this order, Watson and the Defendants present versions of the facts that differ in many ways. The fact disputes are especially numerous and material in the context of the excessive-force allegations. For example, Watson claims that he did not resist arrest, but that an officer tackled him from behind, causing him to fall on top of another officer. Watson Decl. ¶¶ 9-11. The Defendants claim that Watson physically resisted arrest and reached out to strike Officer Mooney, which caused Mooney to grab Watson's hand, pulling Watson on top of him as they fell to the ground. Larkin Decl., Ex. A at 22-23. The Defendants also claim that the officers stunned Watson a few times with a Taser until he was compliant and handcuffed, but Watson claims that the officers applied the Taser even though he was compliant during the entire incident, and continuing applying the Taser even after he was handcuffed. *Compare* Larkin Decl., Ex. A at 29-34, with Watson Decl. ¶¶ 11-14. Defendants concede that the disputes related to the use of the Taser create an issue of fact. *See* Defs.' Reply at 7 n.2.

These material fact disputes preclude summary judgment on the claims related to excessive force. Under Watson's version of the facts, the officers applied Tasers to him multiple times while he was compliant and handcuffed, though he did not resist arrest at any time. Applying the *Graham* factors to Watson's version of the facts, the officers' use of force was excessive. As to the first *Graham* factor, the severity of the crime at issue, Watson was arrested for stealing an inexpensive necklace, a non-violent crime of low severity. Regarding the second *Graham* factor, the threat Watson posed to the police, Watson claims he never threatened the officers verbally or physically. *See* Watson Decl. ¶¶ 9-10. Considering the third *Graham* factor, whether Watson resisted arrest, Watson claims that he never resisted arrest the police at any time. *See* Watson Decl. ¶¶ 9, 11. Assuming Watson's version of the facts is true, as the court must do when considering a summary judgment motion, a fact-finder could conclude that the officers' use of force

ORDER – 7

was excessive under the circumstances. Accordingly, the factual dispute about the amount of force used precludes summary judgment on the excessive force claim.

Accordingly, the material fact disputes in this case preclude summary judgment against Watson's claims related to excessive force. Defendants' motion must be denied as to these claims.

### b) The Officers are Not Entitled to Qualified Immunity.

Defendants also assert that they are entitled to summary judgment based on the officers' qualified immunity. In considering whether a police officer is entitled to qualified immunity, a district court must consider whether, viewing the facts in the light most favorable to the party alleging injury, the facts alleged show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If so, then the district court must next determine whether the constitutional right was clearly established. *Id*. at 202. If the constitutional right was clearly established such that a reasonable officer would have known that his or her conduct violated the law, then qualified immunity does not apply. *Id*.

Viewing the facts in the light most favorable to Watson, his constitutional right to be free from the use of excessive force was violated. As described above, if Watson's version of the facts is true, the officers used excessive force by repeatedly applying a Taser under the circumstances. *See supra* Part III.C.3. Therefore, the first step of the qualified immunity inquiry is satisfied.

The court now turns to the second step, to determine if the contours of Watson's constitutional rights were clearly established. Viewing the evidence in Watson's favor, the law so clearly prohibits the type and amount of force that the officers used against a compliant, non-fleeing suspect in a relatively minor non-violent crime that no reasonable officer could have believed that the force used against Watson was lawful.

ORDER – 8

Watson's theft charge was not serious or violent. *See Davis*, 478 F.3d at 1055 (concluding that trespassing and obstructing were not serious offenses that would warrant a use of severe force). Second, as to whether Watson posed a safety risk, he claims he did not physically or verbally threaten the safety of the officers. Third, with regard to whether Watson attempted to flee or resist arrest, he claims that he never attempted to flee or resist, and that the officers continued to apply the Taser even after he was handcuffed. Because no reasonable officer could have believed that the force used against Watson was lawful under the circumstances as described by Watson, the officers are not entitled to qualified immunity.

### 5. Most of Watson's State Law Claims Against the Officers Fail as a Matter of Law.

Watson has alleged state law claims against the officers for false arrest, assault and battery, negligence, and negligent infliction of emotional distress.

Defendants claim that all of Watson's start tort claims should be dismissed under the public duty doctrine. Under the public duty doctrine, state officials are not liable for negligence based on breach of a duty owed to the general public:

> The threshold determination in a negligence action is whether a duty of care is owed by the defendant to the plaintiff. Whether the defendant is a governmental entity or a private person, to be actionable, the duty must be one owed to the injured plaintiff, and not one owed to the public in general . . . This basic principle of negligence law is expressed in the "public duty doctrine."

*Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988). \

Watson does not deny that the public duty doctrine applies to claims that sound in negligence. Because Defendants have shown that Watson's negligence-based claims fail as a matter of law, and Watson has not presented any facts or argument in opposition, the court grants summary judgment against those claims.

Thus, the court turns to consider whether Watson's intentional tort claims survive summary judgment. As described above, Watson's arrest was supported by probable

ORDER – 9

cause, so Watson's claim for false arrest fails. *See McBride v. Walla Walla County*, 95 Wn. App. 33, 38, *rev. denied*, 138 Wn.2d 1015 (1999) (probable cause is a complete defense to a false arrest claim).

Under Washington law, battery is a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent"; an assault is any such act that causes apprehension of a battery. *McKinney v. Tukwila*, 103 Wn. App. 391, 409 (2000) (internal quotations omitted). State qualified immunity for assault and battery is not available to an officer who uses excessive force. *Staats v. Brown*, 139 Wn.2d 757, 780 (2000). Having determined that, under Watson's version of the facts, a reasonable jury could conclude that the officers used excessive force, the court cannot resolve the assault and battery claim on summary judgment.

**6.    All of Watson's *Respondeat Superior* Claims Against the City Fail.**

Watson has claimed that the City is liable under *respondeat superior* for all of the state law claims alleged against the individual officers. For the reasons addressed earlier in this order, all of Watson's state law claims are dismissed except the assault and battery claim. Therefore, the only claim for which the City could be liable under *respondeat superior* is the assault and battery claim.

The City argues that a municipality can be held liable for its employees' intentional acts only in limited circumstances, none of which apply here. *Respondeat superior* imposes liability on a employer for the tortious acts of an employee who is acting in the scope of employment on the employer's behalf. *Niece v. Elmview Group Home*, 131 Wn.2d 39, 48 (1997). Generally, an employee's tortious acts are not considered to be in the scope of employment, even if the job provided the means or opportunity for the tortious act. *Snyder v. Medical Serv. Corp. of Eastern Wash.*, 145 Wn.2d 233, 242-43 (2001) (holding that employer was not vicariously liable for

ORDER – 10

employee's threats of physical force because the employer forbid its employees to make threats).

In this case, the City's police department policy manual requires its police officers to use reasonable force. *See* Larkin Decl., Ex. C at 4. Watson has presented no facts or argument regarding the scope of the officers' employment, and has not contended that the City authorizes its employees to use excessive force. The court has no basis to conclude that if the officers used excessive force as Watson contends, their use of excessive force was within the scope of their employment. For this reason, the court dismisses Watson's *respondeat superior* claim against the City.

### 7. Watson's Claims Against Unnamed Defendants Fail.

Watson's complaint includes unnamed supervisory police officers and municipal policymakers as Defendants.

Defendants argue that the unnamed defendants should be dismissed because Watson has not amended his complaint to name them despite ample opportunity to do so, and because he has not alleged facts that establish that any unnamed defendant violated any law. Watson does not respond to this argument in his opposition papers.

Because Watson has not presented any facts or argument from which the court could conclude that he has viable claims against any supervisory police officers or municipal policymakers, Watson's claims against the unnamed defendants fail.

## B. Defendants' Motions to Strike are Denied.

Defendants have filed two motions to strike: one to strike Watson's response as untimely and overlength, and the other to strike Watson's surreply based on his failure to comply with the notification requirement regarding surreplies.

Defendants' summary judgment motion was noted for Friday, May 30, 2008. W.D. Wash. Local Rule 7(d) requires the nonmoving party to file a summary judgment

ORDER – 11

response "not later than the Monday before the noting date." Local Rule 7(e)(3) requires that responses to summary judgment motions not exceed 24 pages in length.

In this case, the Monday before the noting date was the Memorial Day federal holiday, May 26, 2008. The "Notice of Electronic Filing" for Watson's response states that it was filed on Tuesday, May 27, and entered at 12:02 a.m. on Wednesday, May 28. The supporting declarations were filed shortly after the response was filed, and the response is 28 pages long. In their reply brief, Defendants moved to strike Watson's response as untimely and overlength.

Watson responded to the motion to strike in a surreply. Local Rule 7(g)(1) requires that a party seeking to file a surreply "must notify all parties (by telephone or facsimile) and the assigned judge's chambers (by telephone) as soon after receiving the reply brief as practicable that a surreply will be filed." Defendants filed a motion to strike the surreply because Watson did not notify Defendants or the court as required by Local Rule 7(g)(1).

The court denies Defendants' motions to strike due to its strong preference for resolving motions on their merits, but the court will not continue to tolerate blatant disregard for the local rules. The court warns counsel that it will not hesitate to impose sanctions if judicial resources continue to be spent resolving these types of problems.

## IV. CONCLUSION

For the foregoing reasons, the court ORDERS as follows:

(1) The court GRANTS Plaintiff's motion to amend (Dkt. # 30).

(2) The court DENIES Defendants' motions to strike (Dkt. # 31, 34).

(3) The court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment (Dkt. # 23).

Dated this 22nd day of July, 2008.

ORDER – 12

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 13